**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

JOHN SHICOBRA YOUNG,
a/k/a J. Shicobra Young,

                              Plaintiff,

            v.                                              No. 9:16-CV-0660
                                                              (FJS/CFH)
CHO POLIZZI,

                              Defendant.

_____

**APPEARANCES:**                              **OF COUNSEL:**

JOHN SHICOBRA YOUNG,
a/k/a J. Shicobra Young
Plaintiff pro se
86-A-2673
Eastern N.Y. Correctional Facility
Box 338
Napanoch, New York 12458

HON. BARBARA D. UNDERWOOD              ERIK BOULE PINSONNAULT, ESQ.
Acting Attorney General for the              Assistant Attorney General
State of New York
Attorney for Defendant
The Capitol
Albany, New York 12224-0341

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

        Plaintiff pro se John Shicobra Young, a/k/a J. Shicobra Young ("Young" or "Plaintiff"),

an inmate who was, at all relevant times, in the custody of the New York Department of

Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42

---

        [1]        This matter was referred to the undersigned for a Report-Recommendation and Order
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. against Defendant CHO Polizzi ("Defendant" or "Polizzi").  Dkt. No. 16 ("Am. Compl.").  Additional defendants were named, but the claims against them have since been dismissed.  Dkt. No. 15.  Presently before the undersigned is Defendant's motion for summary judgment and dismissal of the Amended Complaint pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.) 56.  Dkt. No. 48.  Young did not oppose the motion.  For the following reasons, it is recommended that Defendant's motion be granted.

## I.  FAILURE TO RESPOND

Young failed to oppose Defendant's Motion for Summary Judgment.  Young was notified of the consequences of failing to respond to a summary judgment motion.  Dkt. No. 49.  Given this notice, Young was adequately apprised of the pendency of Defendant's motion and the consequences of failing to respond.  However, "[t]he fact that there has been no response to a summary judgment motion does not . . . mean that the motion is to be granted automatically."  Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996).  Even in the absence of a response, Defendant is entitled to judgment only if the material facts demonstrate his entitlement to judgment as a matter of law.  Id.; FED. R. CIV. P. 56(c).  "A verified complaint is to be treated as an affidavit . . . and [may] be considered in determining whether material issues of fact exist[.]"  See Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995) (citations omitted).  In the Amended Complaint, Young "declare[d] under penalty of perjury that the foregoing is true and correct."  Am. Compl. at 7, 21.  Therefore, as the

2

Amended Complaint is verified,[2] the undersigned will accept the pleading as an affidavit to the extent that the statements are based on Young's personal knowledge or are supported by the record. See Berry v. Marchinkowski, 137 F. Supp. 3d 495, 530 (S.D.N.Y. 2005) (collecting cases to support the proposition that a court may consider unsworn assertions on a motion for summary judgment where they are based on the plaintiff's personal knowledge and in light of special solicitude). Additionally, Young's deposition transcript was annexed as an exhibit to Defendant's motion. Dkt. No. 48-2 ("Young Dep."). Consequently, the facts set forth in Defendant's Rule 7.1 Statement of Material Facts[3] are accepted as true as to those facts that are not disputed by the facts set forth in the Amended Complaint or Young's sworn testimony. N.D.N.Y. L.R. 7.1(a)(3) ("The Court shall deem admitted any properly supported facts set forth in the Statement of Facts that the opposing party does not

---

[2]    The Amended Complaint was properly verified by declaration under 28 U.S.C. § 1746. Am. Compl. at 7, 21; Young Dep. at 13; LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61, 65-66 (2d Cir. 1999) (holding that use of the language "under penalty of perjury" substantially complies with 28 U.S.C. §1746).

[3]    Local Rule 7.1(a)(3) states:

Summary Judgment Motions

Any motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorneys' affidavits.

The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R.  7.1(a)(3).

3

specifically controvert.") (emphasis omitted).

## II.  BACKGROUND

### A.  Facts

The facts are related herein in the light most favorable to Young as the nonmoving party.  See subsection III(A) infra.  At the relevant time, Young, a deaf inmate who is able to read and write in English, was housed in the Sensorially Disabled Unit ("SDU") at Eastern Correctional Facility ("Eastern C.F.").  Dkt. No. 48-5 ("Gibson Decl.") at ¶ 9; Young Dep. at 12.[4]  On December 17, 2015, Sergeant P. Menard ("Menard") prepared a misbehavior report.  Dkt. No. 48-4 ("Polizzi Decl.") at 10.  In the report, Menard described an incident involving Young and another inmate, identified as Inmate John Doe, as follows:

> On 12/17/15 at approximately 9:45 am.[,] I interviewed Inmate John Doe [ ] in the West Wing SDU unit [sic] in regards to an incident that occurred involving inmate Young.  Inmate John Doe states that over the course of the past few days, [I]nmate Young began delivering him hand written love notes, increasing in frequency.  On 12/17/15, at approximately 8:00 a.m. Inmate Young placed a personalized Christmas card containing 1 candy cane and additional hand written notes on the cell bars of 32-23, occupied by Inmate John Doe.  Inmate Young's increasingly aggressive and sexually suggestive behavior caused Inmate John Doe to feel threatened and fear for his safety.  After receiving the most recent correspondence from [I]nmate Young, Inmate John Doe immediately reported to SDU to seek guidance and direction from his Counselor regarding the sexual advances.  SDU Counselor Gibson notified me of the above incident and I then, with the assistance of Sign Language Interpreter Gibson, interviewed Inmate Young.  Young admitted to writing and delivering multiple personalized hand written letters to

---

[4]  Citations to page numbers within this Report-Recommendation and Order refer to the pagination generated by CM/ECF, located at the header of each page.

Inmate John Doe.

Polizzi Decl. at 10.

Menard searched Young's cell and recovered a cartoon-like drawing that was placed in a contraband locker. Polizzi Decl. at 10. Young was charged with a sex offense, stalking, and threats. Id. Young received a copy of the misbehavior report and was transferred to the Special Housing Unit ("SHU").[5] Young Dep. at 15; Polizzi Decl. at 10.

On December 17, 2015, Young executed a form entitled "Assistant List" and chose six assistants from the facility list, including "Meinecke Jr." Polizzi Decl. at 12; Young Dep. at 23. On December 21, 2015, Polizzi presided over a Tier III disciplinary hearing[6] related to the misbehavior report.[7] Polizzi Decl. at ¶ 6. Young had no previous interactions with Polizzi. Young Dep. at 21. Pursuant to 7 N.Y.C.R.R. § 254.2[8], Jason Gibson ("Gibson"), a Translator in Manual Communications employed by DOCCS, provided American Sign Language ("ASL") translation services for Young during the hearing.[9] Gibson Decl. at ¶¶ 1, 12; Polizzi Decl. at 27. The hearing was also audio-recorded in accordance with 7 NYCRR

---

[5]    Polizzi claims that the report was formally served upon Young on December 18, 2015. Polizzi Decl. at ¶ 17. Young testified that he received a copy of the ticket on December 17, 2015. Young Dep. at 15-16.

[6]    DOCCS conducts three types of inmate disciplinary hearings. Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU). Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. Dkt. No. 48-7 at ¶ 9; see Hynes v. Squillace, 143 F.3d 653, 655 (2d Cir. 1998), cert. denied, 525 U.S. 907 (1998).

[7]    The transcript from the hearing is annexed as an exhibit to the defendant's motion. See Polizzi Decl. at 27-39.

[8]    A deaf or hard of hearing inmate who uses sign language to communicate shall receive the assistance of a qualified sign language interpreter who shall be present at the hearing. See N.Y.C.R.R. tit. 7, § 254.2

[9]    Gibson is fluent and certified in ASL. Gibson Decl. at ¶ 4, 6.

§ 254.6(a)(2).[10]  Polizzi Decl. at ¶ 12, 27.

At the commencement of the hearing, Polizzi asked Young if he met with his "assistant, Officer Meineke Jr. on 12/18/15 at 10:20 a.m."  Polizzi Decl. at 27.  Young replied, "Yes."[11] Id.  Polizzi proceeded to read the misbehavior report into the record Young pled "not guilty." Id. at 28.  In response to Polizzi's request for an "explanation," Young stated "I didn't do it sir.  It was the other inmate.  Regarding the candy, the candy cane was inside the garbage can, I just gave it to him."  Polizzi Decl. at 29.  Young identified letters, a cartoon, a Christmas card, a check-list of questions, and notes and admitted that he wrote and delivered the documents to Inmate John Doe.  Id.

Polizzi asked Young if he had any witnesses to call or documents to submit.  Polizzi Decl. at 29.  Young responded, "No, nothing, nothing at all."  Id.; Young Dep. at 33. Polizzi called Menard to testify, via speaker-phone, while Young was present.  Polizzi Decl. at 30; Young Dep. at 35-36.  Menard testified that he interviewed Inmate John Doe as well as Young during the course of his investigation.  Polizzi Decl. at 31.  Inmate John Doe reported that he felt threatened that he asked Young to stop writing letters.  Id. at 31-33. Menard testified that the cartoon drawing of a rabbit, notes, check-list, and cards were "sexual in nature" and considered "active solicitation."  Id.  Menard concluded that Young was attempting to "lure" Inmate John Doe into a sexual relationship.  Id.

After Polizzi completed his questioning, Young was given the opportunity to pose questions to Menard through the hearing officer.  Polizzi Decl. at 33-35.  Menard testified

---

[10]     The entire superintendent's hearing must be electronically recorded.  See NYCRR. tit. 7 § 254.6(a)(2).

[11]     During Young's deposition, he testified that he did not meet with an assistant prior to the hearing.  Young Dep. at 23.

that Inmate John Doe did not report a sexual attack or assault.  Id. at 33.  Menard also
conceded that he did not personally observe any interaction between Young and Inmate
John Doe.  Id. at 34.

On December 28, 2015, the disciplinary hearing concluded.[12]  Polizzi Decl. at ¶ 6.
Polizzi found Young guilty of all charges and sentenced him to 120 days SHU confinement
with a corresponding loss of packages, commissary, and telephone privileges.  Id. at 21.
Polizzi considered the time Young had been confined to the SHU prior to the hearing and
listed the "start date" for the sentence as December 17, 2015.  Id. at ¶41, 21.  Polizzi
explained his decision on the record and issued a written statement of the disposition,
including the evidence relied upon and the reasons for the sentence.  Id. at 21-22, 38.  On
December 28, 2015, Young received the disposition.  Young Dep. at 38.

Young appealed the disciplinary determination.  Young Dep. at 46.  On February 5,
2016, Director of the SHU/Inmate Discipline Program Donald Venettozzi ("Venettozzi")
modified the decision and reduced the penalty to ninety days.  Dkt. No. 48-7 ("Venettozzi
Decl.") at ¶42, 11.  Young claims that despite the modification, he served the entire four
month sentence in SHU.  Young Dep. at 40.  Venettozzi states that Young was confined to
the SHU for ninety days for the offenses related to the December 2015 misbehavior report.
Venettozzi Decl. at ¶ 47.  Venettozzi further avers that Plaintiff served additional time in the
SHU for "other offenses."  Id. Young did not file a grievance or written complaint concerning
the disciplinary hearing.  Young Dep. at 47.

---

[12]     Young refused to attend the last day of his hearing.  Polizzi Decl. at 37.

**B.  Procedural History**[13]

Young filed complaints in three separate civil rights actions in the United States District Court for the Southern District of New York.  Dkt. No. 12 at 1.  Because venue was improper in the Southern District, Chief United States District Judge Loretta A. Preska transferred all three actions to the United States District Court for the Western District of New York ("Western District").  Dkt. No. 4 (the "Transfer Order"); see also 28 U.S.C. § 112(d).  In an Order filed on June 3, 2016, United States District Judge David G. Larimer granted Young in forma pauperis status, reviewed the complaints, and consolidated the actions.  Dkt. No. 10 ("Western District Order").  After consolidating the actions, Judge Larimer reviewed the allegations and held that claims related to events that allegedly occurred at Wende Correctional Facility were subject to dismissal without prejudice.  Id. at 3-4.  The Court further noted that the remaining claims involved allegations related to due process at a disciplinary hearing held at Eastern C.F. in 2015.  Id.  Thus, those claims were transferred to this Court pursuant to 28 U.S.C. § 1406(a).[14]  Id. at 4.

In a Decision and Order filed on August 29, 2016 ("August Order"), Senior United States District Judge Frederick J. Scullin reviewed the pleadings and directed the Clerk of the Court to combine copies of the Complaint, see Dkt. No. 2, and the first supplemental Complaint, see Dkt. No. 13, as the Amended Complaint.[15]  Dkt. No. 15 at 12.  Polizzi was

---

[13]    The procedural history of this action was set forth in a Decision and Order filed on July 27, 2016 (the "July Order") and is summarized herein for purposes of convenience to the parties.  Dkt. No. 12.

[14]    The Clerk of the Northern District obtained copies of the complaints in the three actions and docketed the pleadings as the Complaint (Dkt. No. 2), the first supplemental Complaint (Dkt. No. 13), and the second supplemental Complaint (Dkt. No. 14).

[15]    The Amended Complaint, Dkt. No. 16, became the operative pleading.  Dkt. No. 15 at 12. The Clerk of the Court was directed to strike the second supplemental Complaint (Dkt. No. 14) from the

directed to respond to the Fourteenth Amendment due process and ADA claims.  Id.  In the Amended Complaint, Young seeks monetary damages and injunctive relief ordering Defendant to release him from the SHU.  Am. Compl. at 25.

On February 23, 2018, Defendant filed the within motion pursuant to Fed. R. Civ. P. 56 seeking summary judgment and dismissal of the Amended Complaint.  Dkt. No. 48.  Young did not oppose the motion.

### III.  DISCUSSION[16]

In the Amended Complaint, Young alleges that Polizzi (1) violated his Fourteenth Amendment Due Process rights during the disciplinary hearing; and (2) discriminated against him in violation of Title II of the ADA.[17]  See Am. Compl. at 22-25.  Defendant contends that Young (1) was not deprived of a protected liberty interest; (2) was afforded due process; and (3) was not denied the opportunity to participate in or benefit from services, programs, or activities based upon his disability.  See Dkt. No. 48-1, generally. Alternatively, Defendant claims that Young failed to exhaust his administrative remedies with respect to the ADA claim.  See id.

### A.  Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any

---

docket.  Id.

[16]    All unpublished opinions cited to by the undersigned in this Report-Recommendation & Order have been provided to plaintiff, unless otherwise indicated.

[17]    The ADA claim is asserted against Polizzi in his official capacity.  See Dkt. No. 15 at 10.

material fact, it was supported by affidavits or other suitable evidence, and the moving party

is entitled to judgment as a matter of law. FED R. CIV. P. 56(a). The moving party has the

burden to show the absence of disputed material facts by providing the court with portions

of pleadings, depositions, and affidavits which support the motion. FED R. CIV. P. 56;

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the

outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences drawn

in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine

issue for trial, and must do more than show that there is some doubt or speculation as to

the true nature of the facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475

U.S. 574, 586 (1986). For a court to grant a motion for summary judgment, it must be

apparent that no rational finder of fact could find in favor of the non-moving party. Gallo v.

Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v.

Lewinski, 848 F.2d 342, 344 (2d Cir. 1998).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford

the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471,

477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se
> litigant is entitled to "special solicitude," . . . that a pro se
> litigant's submissions must be construed "liberally," . . . and
> that such submissions must be read to raise the strongest
> arguments that they "suggest,". . . At the same time, our
> cases have also indicated that we cannot read into pro se
> submissions claims that are not "consistent" with the pro se
> litigant's allegations, . . . or arguments that the submissions
> themselves do not "suggest," . . . that we should not "excuse

10

> frivolous or vexatious filings by pro se litigants," . . . and that
> pro se status "does not exempt a party from compliance with
> relevant rules of procedural and substantive law,". . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

## B. Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment states: "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law."  U.S. Const. amend. XIV § 1.  To set forth a prima facie due process claim, "a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001) (citation and quotation marks omitted); see Mitchell v. Keane, 974 F.Supp. 332, 342 (S.D.N.Y. 1997) ("To state a procedural due process claim challenging a disciplinary action, a prisoner must allege both that he was deprived of a liberty interest cognizable under the Due Process Clause, and that he was deprived of that interest without the requisite [procedural due] process.") (emphasis added).

### 1.  Liberty Interest

An inmate has a protected liberty interest in being free from segregated confinement but only where the alleged deprivation imposed amounts to an "atypical and significant hardship in relation to the ordinary incidents of prison life."  Sandin v. Connor, 515 U.S. 472, 483-84 (1995).  "Factors relevant to determining whether the plaintiff endured an 'atypical

11

and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009) (quoting Sandin, 515 U.S. at 484). Although not dispositive, the duration of a disciplinary confinement is significant in determining atypicality. Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000) (citations omitted). No firmly established, bright-line rule exists to determine the length or type of sanction that rises to the level of atypical and significant hardship. Wilkinson v. Austin, 545 U.S. 209, 223 (2005) (citations omitted). Instead, the Second Circuit has provided a general guideline: "[w]here the plaintiff was confined for an intermediate duration—between 101 and 305 days—'development of a detailed record' of the conditions of confinement relative to ordinary prison conditions is required." Palmer v. Richards, 364 F.3d 60, 64-65 (2d Cir. 2004) (quoting Colon, 215 F.3d at 232). In the absence of a dispute about the conditions of confinement, summary judgment may be issued "as a matter of law." Id. at 65 (citations omitted).

Here, Young alleges that he was confined in the SHU for 120 days[18], which is within an intermediate disposition. As such, the length of time itself cannot determine that the confinement was atypical and significant. Therefore, the Court must determine if this confinement was atypical and significant by comparing the conditions of Young's SHU confinement with ordinary prison conditions. See Vasquez v. Coughlin, 2 F. Supp.2d 255, 259 (N.D.N.Y. 1998). In this regard, Young was also penalized with a loss of packages,

---

[18]    As discussed supra, the parties dispute the length of Young's SHU confinement. For the purposes of the within motion, the Court accepts the allegations in the Amended Complaint as true and views all facts most favorably to Young.

commissary, and telephone privileges and asserts that he had limited access to the services of a sign language interpreter while in SHU.  Polizzi Decl. at 21; Young Dep. at 27. Young does not claim, nor does the record support, that he endured any conditions that could be construed as atypical or unusual.  See, e.g., Judd v. Guynup, 9:12-CV-58 (NAM/RFT), 2010 WL 5472113, at *6 (N.D.N.Y. Oct. 17, 2012), adopted by 2012 WL 5471139 (N.D.N.Y. Nov. 9, 2012) (concluding that the plaintiff did not demonstrate atypical conditions of confinement in SHU by noting that the plaintiff's claim that his SHU confinement included a loss of packages, phone, and commissary was "insufficient to support the inference that these losses were atypical for SHU or general population inmates at Clinton.").  Accordingly, the undersigned concludes that Young has failed to establish a protected liberty interest in this period of SHU confinement.  See Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996) (explaining that although prisoners in SHU may be deprived of "certain privileges that prisoners in the general population enjoy," there exists no liberty interest in remaining a part of the general prison population).

### 2. Procedural Due Process

Even assuming that Young established that he was deprived of a protected liberty interest, he has failed to demonstrate that such deprivation occurred without due process of law.  The due process protections afforded an inmate do not equate to "'the full panoply of rights' due to a defendant in a criminal prosecution."  Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (quotation omitted).

> Nevertheless, an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present

13

> documentary evidence; a fair and impartial hearing officer;
> and a written statement of the disposition, including the
> evidence relied upon and the reasons for the disciplinary
> actions taken.

Id. (citing Wolff v. McDonnell, 418 U.S. 556, 563-67 (1974)).

### a. Written Notice

In this case, the issue of written notice is undisputed.  An inmate must be provided

advance written notice at least twenty-four hours before the hearing commences.  Wolff,

418 U.S. at 563-64.  On December 17, 2015, Young received the misbehavior report

authored by Menard.  Young Dep. at 15-16.  The disciplinary hearing commenced on

December 21, 2015.  As such, Young was provided with written advance notice.  Sira, 380

F.3d at 69.

### b. Opportunity to Call Witnesses and Present Documentary Evidence

An accused prisoner has the right to a hearing where he is given the reasonable

opportunity to call witnesses and present documentary evidence.  Sira, 380 F.3d at 69.

Young did not indicate to Polizzi or any prison official prior to the hearing, that he intended

or sought to call any witnesses or present any documentary evidence.[19]  Young Dep. at 25-

33.  At the commencement of the hearing, Young told Polizzi that he did not have any

witnesses to call or documents/evidence to present.  Young Dep. at 33; Polizzi Decl. at 29.

During the hearing, Sgt. Menard testified, via telephone, in Young's presence.  Polizzi Decl.

---

[19]    Young testified that did not make any request related to witnesses until six months after the
hearing.  Young Dep. at 23-32.

at 13.  Young was provided with an opportunity to question Menard, and, in fact, posed a series of questions to Menard.  Id. at 33-35.  Accordingly, Young was not denied the opportunity to call witnesses and present documentary evidence.  Sira, 380 F.3d at 69.

### c.  Fair and Impartial Hearing Officer

Prisoners have a constitutional right to a fair and impartial hearing officer.  Sira, 380 F.3d at 69.  However, "[t]he degree of impartiality required of prison officials does not rise to the level of that required of judges . . . [as i]t is well recognized that prison disciplinary hearing officers are not held to the same standard of neutrality as adjudicators in other contexts."  Allen v. Cuomo, 100 F.3d 253, 259 (2d Cir. 1996) (citations omitted).  The Supreme Court held "that the requirements of due process are satisfied if some evidence supports the decision by the [hearing officer] . . ." and the Second Circuit has held that the test is whether there was "'reliable evidence' of the inmate's guilt."  Luna v. Pico, 356 F.3d 481, 487-88 (2d Cir. 2004); see also Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985).

Prison officials serving as hearing officers "enjoy a rebuttable presumption that they are unbiased."  Allen, 100 F.3d at 259.  "Claims of a hearing officer bias are common in [inmate section] 1983 claims, and where they are based on purely conclusory allegations, they are routinely dismissed."  Washington v. Afify, 968 F. Supp.2d 532, 541 (W.D.N.Y. 2003) (citing cases).  "An inmate's own subjective belief that the hearing officer was biased is insufficient to create a genuine issue of material fact."  Johnson v. Fernandez, No. 09-CV-626 (FJS/ATB), 2011 WL 7629513, at *11 (N.D.N.Y. Mar. 1, 2011) (citing Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989)).

15

Young contends that Polizzi was not fair and impartial and found him guilty with "no evidence." Am. Compl. at 26. Specifically, Young alleges that Polizzi conducted an "off the record" investigation, discriminated against Young due to his race and disability, and failed to consider time already served in SHU when he rendered his decision. Am. Compl. at 22-25; Young Dep. at 48-49. Young's allegations are conclusory and unsubstantiated. The record reveals that Young was afforded a fair and impartial hearing officer. The Tier III hearing transcript demonstrates that Polizzi explained to Young his rights and the hearing officer's obligations, read a copy of the misbehavior report into the record, and gave Young ample time to respond to the allegations in the misbehavior report and call the appropriate witnesses. Polizzi Decl. at 27-39. Additionally, the transcript establishes that Polizzi's determination of guilt was based on the "some evidence" standard set forth in Hill. Polizzi stated that, in making his determination, he relied on Sgt. Menard's misbehavior report dated 12/17/15; Sgt. Menard's testimony; Young's testimony; and documentary evidence including the cartoon, letters, and notes. Id. at ¶¶ 40, 22, 27-39. The disciplinary hearing transcript does not support a finding that Polizzi was anything other than a fair and impartial hearing officer, as there was ample evidence to support a guilty determination.

Even though Young's guilty determination was modified, there is no clear evidence that Polizzi was not a fair and impartial hearing officer. According to Venettozzi, the determination was modified to afford Young the opportunity to "improve his behavior and to refrain from re-offending." Venettozzi Decl. at ¶46. Accordingly, although Polizzi reached a different outcome from what Young may have preferred, the record is clear that there is no question of material fact regarding bias.

16

### d. Statement of Disposition

Young voluntarily refused to attend the last day of his disciplinary hearing.  Polizzi Decl. at 19, 37-38.  The undisputed evidence establishes that Young received a written statement of the evidence relied upon and reasons for the disciplinary action.  Young Dep. at 38.

### e. Inmate Assistance

"An inmate's right to assistance with his disciplinary hearing is limited."  Neree v. O'Hara, No. 9:09-CV-802 (MAD/ATB), 2011 WL 3841551, at *13 (N.D.N.Y. July 20, 2011) (citing Silva v. Casey, 992 F.2d 20, 22 (2d Cir. 1993)).  This Circuit has held that an assistant is constitutionally necessary when the plaintiff is confined in SHU and unable to marshal evidence and present a defense.  Id. (citation omitted).  In such a case, the assistant need only perform what the plaintiff would have done but need not go beyond the inmate's instructions.  Lewis v. Johnson, No. 08-CV-482 (TJM/ATB), 2010 WL 3785771, at *10 (N.D.N.Y. Aug. 5. 2010) (citing Silva, 992 F.2d at 22).  Furthermore, "any violations of this qualified right are reviewed for 'harmless error.'"  Clyde v. Schoellkopf, 714 F. Supp.2d 432, 437 (W.D.N.Y. 2010) (citing Pilgrim v. Luther, 571 F.3d 201, 206 (2d Cir. 2009)).

Here, Young was confined in SHU and thus, was entitled to an inmate assistant.  At the commencement of the hearing, Polizzi inquired:

> Q.    The record also indicates that you meet [sic] with your assistant Officer Meineke Jr. on 12/18/15 at 10:20 a.m., correct?
>
> A.    Yes.

Polizzi Decl at 27.  At Young's deposition, he testified that he selected an inmate assistant,

but that he never met with an assistant.  Young Dep. at 23.  Young's testimony is contradicted by his hearing testimony and at odds with the documentary evidence in the record.  Consequently, Young's conclusory assertions do not create a triable issue of fact with regard to his claims related to assistance.  See Olle v. Columbia Univ., 332 F.Supp.2d 599, 612-15 (S.D.N.Y. 2004) (finding that the plaintiff's deposition testimony was insufficient evidence to oppose the defendants' motion for summary judgment where that testimony was unsupported by admissible evidence and inconsistent with the plaintiff's other statements).

Even assuming Young's recent version of events as true, if he were deprived of adequate assistance, such a deprivation was rendered harmless and a factfinder could not conclude that Young was prejudiced as a result.  Gallo, 22 F.3d at 1223-24.  As discussed supra, Young was able to present a defense and pose questions to Menard that evinced an understanding of the charges.  Polizzi Decl. at 33-35.  For example, Young asked Menard whether the victim reported a sexual attack, whether there was "any solicitation other than the letters" or anything threats in the letters.  Id.  This line of questioning demonstrates that Young had an understanding of the charges against him.  Therefore, any shortcomings in the assistance rendered was harmless error and does not rise to the level of a due process violation.  Hernandez v. Selsky, 572 F. Supp.2d 446, 455 (S.D.N.Y. 2008) (concluding that the plaintiff failed to show how outcome of hearing would have been different had employee assistant interviewed witnesses, and, thus, any alleged inadequate assistance was harmless error not warranting denial of summary judgment).

**f.  Interpreter and Recording**

18

Young claims that Polizzi violated his right to due process when he failed to provide a competent sign language interpreter and failed to video-tape the disciplinary hearing. Am. Compl. at 23-25. The failure to provide interpretive services or assistive devices during disciplinary hearings has been found to be a denial due process. Clarkson v. Coughlin, 898 F. Supp. 1019, 1049 (S.D.N.Y. 1995); Bonner v. Arizona Dept. of Corr., 714 F.Supp. 420, 425 (D. Ariz. 1989) (holding that a deaf inmate had a due process liberty interest in a qualified sign language interpreter during disciplinary hearing proceedings). In this case, however, Young does not assert that he was denied interpretive services; rather, he claims that his constitutional right was violated because the services provided were inadequate. In this regard, Young alleges that the sign language interpreter provided for the hearing, Gibson, understands "a little bit" of sign language. Young Dep. at 28.

Although Young claims that he vocalized his objection to Gibson's translation during the hearing, there is no support for this self-serving statement in the record. Polizzi and Gibson state that Young did not object or indicate that he had difficulty with the translation services during the hearing. Gibson Decl. at ¶ 14; Polizzi Decl. at ¶ 46. The hearing transcript, which is attached as an Exhibit to Polizzi's Declaration, supports their claim. Polizzi Decl. at 27. Even assuming Young objected to Gibson's translation, the record before the Court does not demonstrate that Young was unable to understand the charges against him or meaningfully participate in the hearing to support a due process violation. Gibson is fluent and certified in ASL. Gibson Decl. at ¶ 4, 6. Beginning in June 2015, Gibson provided translation services for Young on "numerous occasions." Id. at ¶ 5. Gibson was present during the disciplinary hearing to provide translation services for Young. Id. at ¶ 12; Young Dep. at 20. During the hearing, through Gibson, Young entered a plea, answered questions

posed by the hearing officer, and asked questions of the witness.  Polizzi Decl. at 29-37.

When the hearing officer presented the cartoon, letters, and cards, Young, who is able to

read and write, authenticated the documents.  Id.  Based upon the record, the Court finds

that Young was able to comprehend the hearing, the charges, and present a defense.

Thus, Young was provided with sufficient due process with respect to the translation

services.

    With respect to Young's claims regarding the recording of the hearing, Polizzi recorded

the entire Tier III disciplinary hearing pursuant to 7 N.Y.C.R.R. § 254.6(a)(2).  Polizzi Decl.

at ¶ 12, 28.  "While New York law requires that an electronic record of a disciplinary hearing

be maintained, 7 N.Y.C.R.R. § 254(b), such a record is not constitutionally required."  Dixon

v. Goord, 224 F. Supp. 2d 739, 744 (S.D.N.Y. 2002) (citation omitted).  "[Section]

254.6(a)(2) provides a procedural requirement in excess of that required by federal due

process such that the failure to abide by § 254.6(a)(2) does not run afoul of the basic

federal due process required for an inmate disciplinary proceeding."  Cepeda v. Urban, No.

12-CV-00408, 2014 WL 2587746, at *10 (W.D.N.Y. June 10, 2014); see also Richardson v.

Williams, No. 15-CV-4117, 2017 WL 4286650, at *7 (S.D.N.Y. Sept. 26, 2017) ("Because

the rule that disciplinary hearings be electronically recorded is derived from state law, and is

not required as a matter of constitutional procedural due process, plaintiff's claim that the

failure to adhere to the recording requirement violated his constitutional rights is baseless.").

Thus, the failure to video record the disciplinary hearing does not create a constitutional

claim.

    In sum, because Young fails to demonstrate that his procedural due process rights

were violated during the disciplinary proceedings, as he received notice of the charges

against him, a fair and impartial hearing officer, a reasonable opportunity to call witnesses and present documentary evidence, inmate assistance, and a written statement of the disposition, he has failed to demonstrate that he was denied procedural due process. Accordingly, it is recommended that Defendant's Motion for Summary Judgment and dismissal of the Fourteenth Amendment Due Process claims be granted.

### D.  ADA[20]

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  A public entity includes "any department, agency ... or other instrumentality of a State or States or local government[.]"   42 U.S.C. § 12131(1)(B). Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 72 (2d Cir. 2016).  Title II of the ADA applies to state inmates.  Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 209-10 (1998); Beckford v. Portuondo, 151 F. Supp.2d 204, 220 (N.D.N.Y. 2001).

To state a claim under the ADA, an inmate must demonstrate that

> (1) he or she is a "qualified individual with a disability"; (2) he or she is being excluded from participation in, or being denied the benefits of some service, program, or activity by reason of his or her disability; and (3) [the facility that] provides the service, program or activity is a public entity.

Clarkson v. Coughlin, 898 F.Supp. 1019, 1037 (S.D.N.Y. 1995); 42 U.S.C. § 12132.

---

[20]     Young does not specify what portions of the ADA are triggered.  Reading the Amended Complaint liberally, it appears that Young seeks relief under Title II.  See Giraldi v. Bd. of Parole, No. 9:04-CV-877 (FJS/DRH), 2008 WL 907321, at *5 (N.D.N.Y.  Mar. 31, 2008) (concluding that Title II applies to state inmates).

Under the ADA, a "qualified individual with a disability" is an "individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the public entity."  42 U.S.C. § 12131(2).  A person is an individual with a disability if he has "a physical or mental impairment . . . [that] substantially limits one or more of the major life activities of such individual," there is a "record of such an impairment," or the person is "being regarded as having such an impairment."  42 U.S.C. § 12102(1)(A)-(C).

### 1.  Claim for Monetary Relief

Case law provides that an individual cannot be named as a defendant in ADA suits either in their official or representative capacities for monetary damages.  See Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001); see also McFadden v. Roy, Nos. 9:03-CV-0931 (GTS/DRH), 9:04-CV-0799 (GTS/DRH), 2009 WL 799968, at *21 (Mar. 25, 2009); see also Alster v. Goord, 745 F.2d 317 (S.D.N.Y. 2010) (holding that the appropriate party in interest for a plaintiff's claims against individual defendants in their official capacities is the state itself).  Thus, Young's ADA claim for monetary damages against Polizzi should be dismissed.

### 2.  Claim for Injunctive Relief

Construing the Amended Complaint liberally, Young seeks an injunction ordering that he be released from the SHU.  Am. Compl. at 11, 25.  Claims for prospective injunctive

relief against state officers in their official capacity may be pursued under Title II of the ADA.  See Henrietta D. v. Bloomberg, 331 F.3d 261, 288 (2d Cir. 2003).  Even assuming that Young is a qualified individual with a disability under the ADA due to his hearing impairment, Young must establish that he was excluded from participation in, or denied the benefits of, a program.[21]

With respect to the third element of an ADA claim, the Court must determine "whether, a plaintiff with disabilities 'as a practical matter,' was denied 'meaningful access' to services, programs, or activities to which he or she was 'legally entitled.'" Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 72 (2d Cir. 2016) (citing Henrietta D., 331 F.3d at 272).  "A reasonable accommodation must provide effective access to prison activities and programs." Id. at 73 (citation omitted).  "Although a public entity must make 'reasonable accommodations,' it does not have to provide a disabled individual with every accommodation he requests or the accommodation of his choice." McElwee v. Cty. of Orange, 700 F.3d 635, 641 (2d Cir. 2012).  "[T]he plaintiff bears the initial burdens of both production and persuasion as to the existence of an accommodation" that is "facial[ly] reasonable[ ]." Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Sci., 804 F.3d 178, 190 (2d Cir. 2015).

As discussed supra, in accordance with DOCCS regulations, Gibson was present during the disciplinary hearing to provide translation services, and Polizzi created an audio-recording of the hearing.  Polizzi also provided a written disposition, which Young admits that he received.  Polizzi Decl. at 21-22, 38; Young Dep. at 38.  Young claims that Polizzi

---

[21]    Defendant does not dispute that Young has met the first element as he alleges a physical impairment that substantially limits his ability to hear.

denied him reasonable accommodations because he failed to videotape the disciplinary hearing and failed to provide an acceptable, professional sign language interpreter. Am. Compl. at 23. First, the evidence does not establish that Young requested any such accommodations from Polizzi either before or during the hearing. Second, as discussed supra, while Young claims he vocalized his objection to the translation services during the hearing, the competent, admissible evidence does not support that contention. Even so, the evidence does not establish how the failure to videotape the hearing and refusal to provide a professional interpreter, prevented Young from participating in his hearing. Young entered a plea and answered several questions regarding the Christmas card, check-list, cartoon, and notes that he wrote to Inmate John Doe. Polizzi Decl. at 29. Young was also able to pose questions to Menard during the proceeding. Id. at 33-35. The record further establishes that, as a result of a prior request for a "reasonable accommodation," Young had a hearing aid.[22] Young Dep. at 63. Young also testified that he was not precluded from participating in any programs within the facility due to his disability. Id. The record lacks any evidence suggesting that Young was unable to communicate through the sign language interpreter during the disciplinary hearing. Additionally, although the hearing was not video recorded, Young was provided with a written disposition and timely filed an appeal. Venettozzi Decl. at ¶ 42.

Although Young may have preferred a different interpreter or means of documenting the hearing, Polizzi did not violate the ADA by failing to provide Young with the

---

[22]    Young testified that Gibson provided him with a hearing aid and an alarm. Young Dep. at 63. Young's hearing aid was stolen "three or four weeks" before his deposition. Id. There is no evidence suggesting that Young was not in possession of a hearing aid at the time of the disciplinary hearing.

accommodations of his choice.  See Kearney v. N.Y.S. D.O.C.S., No. 9:11-CV-1281

(GTS/TWD), 2013 WL 5437372, at *8 (N.D.N.Y. Sept. 27, 2013), aff'd sub nom., 581 F.

App'x 45 (2d Cir. 2014) (summary order) (holding that DOCCS refusal to grant the plaintiff

"the accommodation of his choice" does not subject Defendants to liability for disability

discrimination); see Alster, 745 F. Supp.2d at 340 ("[A]s long as [Defendants] reasonably

accommodated [the plaintiff's] disability, they need not provide him with the exact

accommodations he demanded.") (citation omitted).

Young summarily claims that Polizzi discriminated against him based upon his race and

disability.  Am. Compl. at 24-25; Young Dep. at 49.  Young's claims are unsupported by the

record and contradicted by his own deposition testimony.  Young alleged that "all officers"

discriminated against him, but admitted that Polizzi did not make any statements that Young

considered discriminatory during the course of his disciplinary hearing.  Id. at 52.

Ultimately, the record is devoid of evidence indicating that, by reason of his alleged

impairment, Young was denied assistance for marshaling his defenses during the

disciplinary hearings.  Thus, despite his conclusory allegations, Young was provided with

reasonable accommodations for any shortcomings that Young felt he faced in the

disciplinary hearings.  Accordingly, because Young has failed to establish that he was

excluded from participation in, or denied access to, a program, or that he was wrongfully

denied a reasonable accommodation, it is recommended that Defendant's Motion for

Summary Judgment on this ground be granted.[23]

---

[23]    In light of the undersigned's recommendation that Young's ADA claim be dismissed in its
entirety based on the merits, I find it unnecessary to address the alternative failure to exhaust argument
related to this claim.

## IV.  CONCLUSION

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that Defendant's motion for summary judgment (Dkt. No. 48) be

**GRANTED**; and it is

**ORDERED**, that copies of this Report-Recommendation and Order be served on the

parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1( c), the parties have fourteen

days within which to file written objections to the foregoing report. Such objections shall be

filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN**

**FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  See Roldan v. Racette,

984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892

F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

**IT IS SO ORDERED.**

Dated: July 11, 2018
       Albany, New York

Christian F. Hummel
U.S. Magistrate Judge